# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| IBLC Abogados, S.C., <br> Plaintiff, <br><br> v. <br><br> PHILIP BRACAMONTE, as Trustee of the BRACAMONTE FAMILY TRUST: and DOES 1-25, inclusive, <br><br> Defendants. | Civil Action No. 11-cv-2380-GPC-KSC <br><br> **ORDER** <br><br> **(1) GRANTING DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT** <br><br> **(2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [DKT. NO. 41, 51] |
|---|---|

Before the Court are cross motions for partial summary judgment. (Dkt. Nos. 41, 51.) For the reasons stated below, the Court **GRANTS** Defendant Philip Bracamonte's motion for partial summary judgment. (Dkt. No. 41.) The Court **DENIES** Plaintiff IBLC's motion for partial summary judgment. (Dkt. No. 51.)

**I. PROCEDURAL BACKGROUND**

On October 13, 2011, Plaintiff IBLC Abogados, S.C. ("Plaintiff" or "IBLC") filed this breach of contract claim against Defendants Philip Bracamonte ("Bracamonte"), Bracamonte Family Trust, (collectively referred to as "Defendants") and DOES 1-25 for failure to pay attorney fees. (Dkt. No. 1.) On November 3, 2011, Defendants filed an answer to the complaint and a third party complaint for legal malpractice, fraud, and negligent misrepresentation against Plaintiff IBLC Abogados and Counter-Defendant Alfredo Andere-Mendiola ("Andere"). (Dkt. No. 3.) Defendants and Counter-Claimants also seek an action for setoff in the event of a negative judgment and request an accounting of certain property in Mexico allegedly held by Plaintiff and Counter-Defendant IBLC and Counter-Defendant Andere. (Id.) On March 27, 2012, IBLC filed a first amended complaint. (Dkt. No. 20.) On May 25, 2012, the Court provided a tentative ruling denying Defendants' motion to dismiss pursuant to the forum non conveniens doctrine. (Dkt. No. 33.) On May 29, 2012, the Court by minute order affirmed the tentative ruling, holding that California was the appropriate legal forum. (Dkt. No. 34.) On October 9, 2012, this case was transferred to the undersigned judge. (Dkt. No. 37.)

On March 18, 2012, Defendant Bracamonte, as Trustee of the Bracamonte Family Trust, filed a motion for partial summary judgment seeking a determination that the law of the state of California applies to Plaintiff's breach of contract claim, and a finding that the two year statute of limitations applicable to oral agreements under California law bars Plaintiff's claims for breaches

1                                                                        **Civil Action No. 11-cv-2380-GPC-WMC**

occurring more than two years before the filing of the complaint and therefore limits Plaintiff's damages. (Dkt. No. 41.) Plaintiff IBLC and Counter-Defendant Arreola filed an opposition. (Dkt. No. 50.)

On April 10, 2013, this Court granted the parties' joint motion to allow the filing of cross motions for partial summary judgment "limited to a mirror image of the issues presented by the pending motion for partial summary judgment." (Dkt. No. 49.)

On May 10, 2013, Plaintiff and Counter-Defendant IBLC and Counter-Defendant Andere filed a motion for partial summary judgment seeking a determination that Mexican law applies to the contract at issue, and under Mexican law, none of Plaintiff's claim is time-barred. (Id.) Defendant Bracamonte filed an opposition. (Dkt. No. 52.)

## II. FACTUAL BACKGROUND

The material facts relevant to the motions for partial summary judgment are undisputed.[1] Plaintiff IBLC is a Mexican law firm and Counter-Defendant Andere is the Principal of IBLC. (FAC ¶ 3; Dkt. No. 50-1, Undisputed Material Facts, "UMF" ¶ 4.) Defendant Bracamonte is a U.S. citizen and resides in Henderson, Nevada. (Dkt. No. 26, "Answer," ¶ 1.) Andere is a legal resident of the United States, and has made San Diego his personal residence and domicile for the last 26 years. (UMF ¶ 5.) Andere practices law in Mexico and primarily administers IBLC from San Diego, California. (UMF ¶ 6.)

Jim Bracamonte, Defendant's father, was the founder, owner and majority shareholder of Jimsair, a gasoline supply business at the Mexican Tijuana Airport. (FAC ¶ 12-a.) In the early 1970's, Jim invested in a major land development project in Baja California, Mexico ("Bahia Properties"). (FAC ¶ 11, 12.) The

---

[1] See Dkt. No. 42, Joint Motion for Entry of Order Allowing Cross Motions for Partial Summary Judgment. "The parties agree that these issues can be determined as a matter of law based on undisputed facts."

2 **Civil Action No. 11-cv-2380-GPC-WMC**

investment faced complicated personal and legal challenges resulting in a long litigation battle for rightful title to the Bahia Properties. (Id.) A portion of these legal challenges resulted in difficulties between Jim and his Mexican business partner, Evangelina Agundez Castro ("Vitta"). (Id.) Ultimately, the development was not completed due to potential liability on behalf of Bahia Property partners and the Mexican government's potential liability under NAFTA regulations. (FAC ¶ 11.) In 2001, Jim fell fatally ill and he died in 2004. (FAC ¶ 12-x.) During this period, Vitta and her family took over management and control over the Bahia Properties. (Id.)

Although the exact start date of the client relationship between IBLC and Mr. Bracamonte is unclear, the parties agree that sometime in 2004, Mr. Bracamonte communicated with IBLC for the purposes of providing legal services related to his father's Mexican property and business investments. According to IBLC, pursuant to a Mexican will left by Jim, Defendant Bracamonte had interest in all of his father's properties. (FAC ¶ 13-c.) As such, IBLC's representation of Mr. Bracamonte arose out of the IBLC's prior and continuing representation of Jimsair, and began in 2004 when Mr. Bracamonte asked Mr. Andere and IBLC employees to look into the status of the Bahia Properties. (FAC ¶ 15, 16, 17.) Although Defendant disputes this characterization, Mr. Bracamonte admits Jimsair paid for IBLC's legal services until 2008 and thereafter the Bracamonte Family Trust paid the fees. (Answer ¶ 13.) The attorney-client relationship continued until sometime in 2011.

Andere directed all of IBLC's work on Bracamonte's case from 2004 to the present. (UMF ¶ 7.) Andere's work included personally reviewing all the billings, fees, and costs of IBLC in this matter, and discussing them frequently

3                                                            **Civil Action No. 11-cv-2380-GPC-WMC**

with Bracamonte, his family, and other representatives of Jimsair.[2] (UMF ¶ 8.) The vast majority if not all of IBLC's communications with Bracamonte were sent via email and/or hand delivered to Bracamonte in San Diego, and all are in English. (UMF ¶ 9.) Most of the meetings between Andere and Bracamonte and other members of the Bracamonte Trust Family occurred in San Diego. (UMF ¶ 10.)

IBLC seeks to enforce an oral agreement to pay attorney fees and costs incurred by Bracamonte. (FAC ¶ 2; UMF ¶ 1.) The agreement was "a verbal agreement with the client [Bracamonte], which was demonstrated by the billings and payments for years." (UMF ¶ 16.) The agreement was formed in San Diego, California. (UMF ¶ 2.) The place of performance of Defendant's obligation is California. (UMF ¶ 3.) IBLC contends the terms of its agreement with Bracamonte required him to pay IBLC its hourly fees and actual expenses incurred on the Bahia properties matter within 30 days of their being billed on a monthly basis. (UMF ¶ 15.) IBLC alleges Bracamonte owes $109, 529.23 in regular fees incurred from bills sent between September 24, 2008 and August 30, 2011. (UMF ¶ 17.) The bills sent to Bracamonte within 30 days of October 12, 2009 were the bills covering the periods September 2009 and later. (UMF ¶ 18.) IBLC alleges $72,822.55 is owed but unpaid on invoices sent to Bracamonte from November 18, 2009 to the present. (UMF ¶ 19.) IBLC is seeking to collect $136,087.38 in "deferred" billings, or "previous amounts owed to IBLC from Feb. 2004 to May 2010." (UMF ¶ 20.)

Under the terms of the legal services agreement between the parties, IBLC agreed to provide temporary discounts to Jimsair per Bracamonte's request, which

---

[2] Jimsair was founded by Defendant's father, the deceased Jim Bracamonte. (FAC ¶ 12.a.) Jimsair was a gasoline supply business, flying school, and executive airplane charter service located at the airport in Tijuana, Mexico. (Id.) Jim Bracamonte died in 2004, and left California and Mexican wills. (Answer ¶ 13.a.) The sale of Jimsair closed on July 18, 2008.(Undisputed Material Facts ¶ 22.)

4 **Civil Action No. 11-cv-2380-GPC-WMC**

discounts would be paid by Jimsair, plus a bonus of ten percent of the value of the Mexican case at its conclusion, or upon the renewal of an airport agreement. (Id.) Later on, the agreement was changed in a number of ways, including a requirement that the discounts were to be paid within 6 months to 1 year from the sale of Jimsair. (Id.)

**A. Terms of the Agreement**

The terms of the contract between the parties are undisputed. Mr. Andere, IBLC's principal, had a close, personal, friendly relationship with Mr. Bracamonte. (UMF ¶ 21.) At some point, Mr. Andere and Mr. Bracamonte entered into "a verbal agreement . . . which was demonstrated by the billings and payments for years." (UMF ¶ 16.) The agreement was formed in San Diego, California, and the place of performance of Defendant's obligation (payment for services rendered) was also in California. (UMF ¶ 2, 3.) Mr. Bracamonte was required to pay IBLC hourly fees and actual expenses incurred on the Bahia properties matter within 30 days of their being billed on a monthly basis. (UMF ¶ 15.)

Plaintiff IBLC and Counter-Defendant Mr. Andere performed attorney services for Mr. Bracamonte both in San Diego and in Mexico. From 2004 to 2011, IBLC "conducted wide-ranging litigation in the Mexican civil, criminal and administrative courts on the Bahia Properties matter" which incurred fees totaling over $2 million. (FAC ¶ 25.) This work included a review of legal documents, surveying of the land and resolving border issues, identification and prosecution of squatters on the land, litigation in Mexican courts to acquire full legal title over the Bahia Properties, and litigation against Jim's former Mexican business partner, Vitta. (FAC ¶ 20, 26-27.) All the while, Mr. Andere, a United States legal resident, resided in San Diego. (UMF ¶ 5.) Although Mr. Andere exclusively practices Mexican law, he primarily administers IBLC from San Diego,

5 **Civil Action No. 11-cv-2380-GPC-WMC**

California. (UMF ¶ 6.) Mr. Andere directed all of IBLC's work on Mr. Bracamonte's case and the vast majority of IBLC's communications were sent via email and/or hand delivered to Mr. Bracamonte who resided in San Diego at the time. (UMF ¶ 7-9.) Most of the attorney-client meetings took place in San Diego. (UMF ¶ 10.)

Over the course of representation, Jimsair or the Bracamonte Family Trust has paid IBLC approximately $2 million in fees for services rendered related to the Mexican business and properties. (FAC ¶ 29, Answer ¶ 15.) IBLC alleges Mr. Bracamonte still owes $109, 529.23 in "regular" fees incurred from bills sent between September 24, 2008 and August 30, 2011. (UMF ¶ 17.) IBLC also seeks to collect $136,087.38 in "deferred" fees incurred during periods of temporary discounts provided by IBLC to Mr. Bracamonte from Feb. 2004 to May 2010." (UMF ¶ 20.)

### B. Temporary Discount Modification

During the course of the agreement, IBLC at times agreed to provide temporary discounts to Jimsair per Mr. Bracamonte's request. (UMF ¶ 20.) Initially, the discounts were to be paid by Jimsair, plus a bonus of ten percent of the value of the Mexican case at its conclusion, or upon the renewal a Jimsair airport agreement. (Id.) Then later on, the agreement changed, with the discounts to be paid within 6 months to 1 year from the sale of Jimsair. (Id.) The temporary discounts were part of the statement of accounts since August 6, 2009 and have not been paid by either Jimsair or Mr. Bracamonte. (Id.)

## III. LEGAL STANDARD

Although motions for partial summary judgment are common, Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment, does not contain an explicit procedure entitled "partial summary judgment." As with a motion under Rule 56(c), partial summary judgment is proper "if the pleadings,

6 **Civil Action No. 11-cv-2380-GPC-WMC**

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The purpose of partial summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986). Partial summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a

7  **Civil Action No. 11-cv-2380-GPC-WMC**

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**IV. DISCUSSION**

The parties seek a determination as to whether California or Mexican law applies to Plaintiff's breach of contract claim, the applicable statute of limitations and available fees and costs.[1] The Court's finding on these issues affects the amount Plaintiff may be able to recover for the alleged breach of contract.

Defendant Bracamonte requests a determination that California law and its statute of limitations applies to the contract. (Dkt. No. 41, "Def. Mtn." at 1.) As such, Bracamonte seeks a judgment that Plaintiff is barred from seeking to recover any amounts that Plaintiff contends were first due more than two years before filing of this action as a result of California's two-year statute of limitations applicable to oral agreements. (Id.) This judgment would allegedly limit Plaintiff to seeking $83,145.55 of the $245,346.61 sought in the FAC. (Id.)

Plaintiff IBLC contends Mexican law governs the contract. (Dkt. No. 51, "Pl. Mtn." at 1.) Under Mexican law, the statute of limitations to enforce

---

[1] The parties have not sought a determination as to whether California law applies to Mr. Bracamonte's counterclaims for legal malpractice, fraud, and negligent misrepresentation. Under California conflict of law principles, the Court is obligated to conduct a separate choice-of-law analysis as to each issue presented for decision. See S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co., 641 F.2d 746 (9th Cir.1981) ("A separate choice-of-law inquiry must be made with respect to each issue in a case."); Arno v. Club Med Boutique Inc., 134 F.3d 1424 (9th Cir.1998) (under California choice of law analysis, separate choice of law analysis required as to liability issues and attorney's fees issues in tort action). As such, the Court declines to address other separate causes of action presently not before it.

8 **Civil Action No. 11-cv-2380-GPC-WMC**

contracts for legal services is two years after the services end and, accordingly, no part of Plaintiff's request for relief would be time-barred. (Pl. Mtn.at 4.)[2]

A**. Choice of Law**

This Court has diversity jurisdiction pursuant to 28 USC § 1332(a)(2). (FAC ¶ 1.) "A federal court sitting in diversity applies the forum state's choice of law rules." Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1002 (9th Cir. 2010) (citing Hoffman v. Citibank (S.D.), N.A., 546 F.3d 1078, 1082 (9th Cir.2008) (per curiam)). Therefore, the Court must apply California's choice of law rules to determine whether California or Mexican law applies to the breach of contract issue. "California, as the forum, has a special interest in having its own law apply. The law of the forum will be displaced only if there is a compelling reason for doing so." Kasel v. Remington Arms Co., 24 Cal. App. 3d 711, 731 (Ct. App. 1972). The party advocating for the application of foreign law carries the burden of proof. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1006 (9th Cir.2001) (discussing Hurtado v. Superior Court, 11 Cal.3d 574, 581 (Cal.1974)).

The Ninth Circuit has recognized differences among California courts as to whether California's choice of law rule for contracts is the "governmental interest" test or the test under Cal. Civ. Code § 1646. Arno v. Club Med Inc., 22 F.3d 1464, 1472 (9th Cir. 1994).

Relying on Frontier Oil Corp. v. RLI Ins. Co., 153 Cal.App.4th 1436 (2007), Defendant urges the Court select Cal. Civ. Code § 1646, the statute

---

[2] Plaintiff also asserts that Defendant made the judicial admission that Mexican law applies when arguing in support of dismissal based on forum non conveniens. (Def. Mtn. 5-7.) The Court has the discretion to consider whether pleadings and statements in briefs may constitute judicial admissions. Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 227 (9th Cir. 1988). In this case, the parties made their statements and arguments regarding the appropriate legal forum before a different judge. It appears both parties made statements that would be contrary to their arguments here to determine the legal question on choice of law. As such, the Court declines from finding the statements and arguments related to selection of the appropriate legal forum constitute judicial admissions that either Mexican or California law applies.

9 **Civil Action No. 11-cv-2380-GPC-WMC**

governing contract interpretation, as the authoritative choice of law rule. (Def. Mtn. at 3.) Under this test, Defendant argues California law applies because the contract was formed in California and the place of contract performance is San Diego. (Id. at 4-7.)

Plaintiff disagrees, and requests the Court to utilize the "governmental interest" test as articulated in Reich v. Purcell, 67 Cal. 2d 551 (1967). (Pl. Mtn. at 7.) Under this test, Plaintiff argues Mexican law applies because the relevant law of each jurisdiction differs, each jurisdiction's interest in the application of its own law shows no true conflict exists, and Mexico has a significant interest in having its own law applied. (Id. at 9-11.) Plaintiff also asserts the test under Restatement Section 188 leads to the choice of Mexican law. (Id. at 13.)[3]

### i. Cal. Civ. Code § 1646

Cal. Civil Code § 1646 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." In Frontier Oil Corp. v. RLI Insurance, 153 Cal.App.4th 1436, 1442-43 (Cal. App. 2007), the California Court of Appeals concluded that "notwithstanding the application of the governmental interest analysis to *other* choice-of-law issues, Civil Code section 1646 is the choice-of-law rule that determines the law governing the *interpretation* of a contract."

"If not expressly stated, a "contract 'indicate[s]' a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." Frontier, 153 Cal. App. 4th at 1450. "The intended place of performance is a

---

[3] Although the Court refrains from addressing the Section 188 arguments, the Court finds that California law would also apply under this test.

10 **Civil Action No. 11-cv-2380-GPC-WMC**

question of contract interpretation for the court to decide, except to the extent the answer may depend on the credibility of extrinsic evidence." Id.

Defendant argues the agreement being sued over is not a written contract, and therefore there is no express specification of a place of performance. (Def. Mtn. at 4.) Defendant also asserts the undisputed facts show Defendant's duty to perform his obligation under the contract "i.e. paying for the services provided by plaintiff – was to be carried out in San Diego." (Def. Mtn at 6; FAC ¶ 1.) Plaintiff responds the Court must look to the nature of the contract and surrounding circumstances to determine place of performance, and these facts argue in favor of finding the place of contract performance is Mexico. (Pl. Mtn. at 12.)

The Court agrees with Defendant. There is no evidence on the record indicating an express agreement regarding the place of contract performance. As such, the Court looks to the nature of the contract and surrounding circumstances. Frontier, 153 Cal. App. 4th at 1450. The undisputed facts support a finding that the majority of the contract performance took place in California:

> **a. The agreement was formed in San Diego, California.** (UMF ¶ 2.)
> **b. Defendant's contract performance took place in San Diego.** Defendant Mr. Bracamonte was obligated to perform his contractual obligation by way of payment for attorney services in San Diego. (UMF ¶ 3; FAC ¶ 42 ["Mr. Bracamonte failed to satisfy all, or substantially all, of his material duties and obligations under the agreement beginning in late 2010 – i.e., his duty to pay IBLC's monthly statements on time and in full – and IBLC never excused Mr. Bracamonte from such performance, and therefore Mr. Bracamonte breached the agreement."]; Def. Mtn at 6 "Mr. Bracamonte will not dispute that his obligation under the contract was to make payments to IBLC in San Diego County.)
> **c. Plaintiff IBLC's principal, Mr. Andere, is a resident of California, primarily administers IBLC from California, and negotiated the agreement in California.** Mr. Andere is a legal resident of the United States, and has made San Diego his personal residence and domicile for the last 26 years. (UMF ¶ 5.) Mr. Andere

11 **Civil Action No. 11-cv-2380-GPC-WMC**

practices law in Mexico and primarily administers IBLC from San Diego, California. (Id. ¶ 6.) Mr. Andere negotiated the terms of the agreement with Mr. Bracamonte. (Id. ¶ 21.)

**d. Most of the communications regarding legal services rendered in Mexico took place in San Diego, California.** Mr. Andere directed all of IBLC's work on Mr. Bracamonte's case from 2004 to the present. (Id. ¶ 7.) Mr. Andere's work included personally reviewing all the billings, fees, and costs of IBLC in this matter, and discussing them frequently with Mr.Bracamonte, his family, and other representatives of Jimsair. (Id. ¶ 8.) The vast majority if not all of IBLC's communications with Mr. Bracamonte were sent via email and/or hand delivered to Mr. Bracamonte in San Diego, and all are in English. (Id. ¶ 9.) Most of the meetings between Mr. Andere and Mr. Bracamonte and other members of the Bracamonte Trust Family occurred in San Diego. (Id. ¶ 10.) Defendant acknowledges that the subject matter of the services provided by Plaintiff IBLC was legal services relating to property in the state of Baja, Mexico. (Def. Mtn. at 6.) The Court recognizes that IBLC's performance of the contract included rendering attorney services related to legal issues in Mexico. (FAC ¶ 2.) However, the undisputed facts show that much of the legal advice communicated to Mr. Bracamonte took place in California.

Meanwhile, the record shows that a part of the contract was to be performed in Mexico:

**a. The IBLC's legal representation of Mr. Bracamonte and Jimsair was carried out in Mexican courts.** From 2004 to 2011, IBLC "conducted a wide-ranging litigation in the Mexican civil, criminal and administrative courts on the Bahia Properties matter." (FAC ¶ 25.) This work included surveying of the land and resolving border issues, identification and prosecution of squatters on the land, litigation in Mexican courts to acquire full legal title over the Bahia Properties, and litigation against Jim's former Mexican business partner, Vitta. (FAC ¶ 20, 26-27.)
**b. The obstacles IBLC and Mr. Andere encountered throughout legal representation occurred in Mexico.** Plaintiff IBLC notes several difficulties in representing Mr. Bracamonte on the Bahia Properties matter, including challenges interacting with Jim's former partner Vitta and her family, dealing with the local authorities and

12 **Civil Action No. 11-cv-2380-GPC-WMC**

residents of Bahia de los Angeles, travel distance from Tijuana to Bahia (a 10 hour drive), lack of judicial authorities in Bahia de los Angeles, disorganization and lack of transparency at the Public Registry of Property and Commerce, and frequent threats and intimidation from certain corrupt Mexican officials and interested Mexican citizens. (FAC ¶ 21.)

Given these undisputed facts regarding the nature of the contract and the surrounding circumstances, the Court concludes that the primary place of contract performance is California. As such, Civil Code § 1646 requires application of California law to the "interpretation" of the contract. Plaintiff argues that § 1646 has been supplanted by the governmental interest analysis which was developed in Reich. Ultimately, the Court finds that either under § 1646 or under the governmental analysis test, addressed below, California provides the applicable law for the interpretation of the contract.

### ii. "Governmental Interest" Test

The fact that § 1646 requires application of California law to govern the "interpretation" of the contract does not answer the related question as to whether California or Mexican law provides the applicable statute of limitations in this case. As recognized in McCann v. Foster Wheeler LLC, 48 Cal. 4th 68 (Cal.2010), a question whether the relevant California statute of limitations or, instead, another jurisdiction's statute of limitations should be applied in a particular case must be determined through application of the governmental interest analysis that governs choice-of-law issues generally. See also, Ashland Chemical Co. v. Provence, 129 Cal.App.3d 790, 793–794 (Cal.App.1982) [holding that under California law, governmental interest analysis is applicable to resolve a choice-of-law issue relating to the statute of limitations]; Nelson v. International Paint Co., (9th Cir.1983) 716 F.2d 640, 644 [same].)

13 **Civil Action No. 11-cv-2380-GPC-WMC**

In adopting the "governmental interest" test to determine choice of law, the California Supreme Court stated that "in a complex situation involving multistate contacts . . . no single state alone can be deemed to create exclusively governing rights." Reich, 37 Cal. 2d at 553. As such, "the forum must search to find the proper law to apply based upon the interests of the litigants and the involved states." Id. Since Reich, the California Supreme Court has summarized the approach as a three-step process.

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the politic of the other state' [citation] and then ultimately applies the 'law of the state whose interest would be more impaired if its law were not applied.'" Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006)

In Reich, the Supreme Court dealt with a complex tort case involving three different states. 37 Cal. 2d at 551. The Court reversed a judgment that the law of Missouri applied to limit recovery in a wrongful death action. Reich, 37 Cal. 2d at 553. The Court adopted the "governmental interest" test because the narrower "place of the wrong" test would defeat the interests of the litigants and of the states concerned." Id. at 554. Here, there are only two possible state laws at issue, and Plaintiff IBLC selected the California forum to litigate its breach of

14 **Civil Action No. 11-cv-2380-GPC-WMC**

contract claim. Unlike Reich, the Plaintiff here is not a California citizen, nor a survivor of an automobile accident seeking to recover in a wrongful death action. Rather, Plaintiff is Mexican law firm with a clear understanding of the law in both Mexico and the United States.

### a. Mexican and California Law Differ

The Court finds that Mexican and California law differ in a number of important aspects. IBLC's expert declaration of Jorge Alberto Silva-Silva, undisputed by Defendant, states that there are at least six main differences between California and Mexican law regarding contracts. (Dkt. No. 51-3, "Silva Decl." ¶ 10.) Those include: (i) whether contracts for legal services are required to be in writing; (ii) whether the statute of limitations for enforcing the payment of fees and costs under a Mexican contract for legal services is affected by it being in writing or oral; (iii) when that statute of limitations commences to run; (iv) the rights of the lawyer against the non-paying client, including whether the fees and costs incurred by a law firm suing a client for payment are recoverable; (v) the importance of the powers of attorney given by the client to the lawyer undertaking legal services in Mexico; and (vi) the statute of limitations, and time for bringing the action, of the counterclaims against IBLC. (Id.)

### b. Mexico and California have a strong interest in the application of its own law and a true conflict exists.

"If application of a foreign decisional rule will not significantly advance the interests of the foreign state, a California court will conclude that the conflict is 'false' and apply its own law. Strassberg v. New England Mut. Life Ins. Co., 575 F.2d 1262, 1264 (9th Cir. 1978). The Court finds that there is a true conflict between the laws of Mexico and California as to the applicable statute of limitations and the availability of attorney fees and costs.

15 **Civil Action No. 11-cv-2380-GPC-WMC**

Plaintiff argues there is no true conflict because only Mexico has an important interest in seeing its law applied. Plaintiff asserts Mexico has a strong interest because the case "arises out of years of Mexican litigation in Mexico by Mexican lawyers seeking to recover unpaid fees and costs, and their litigation expenses, from a client who has counterclaimed for legal malpractice and other torts that purportedly transpired in Mexico." (Pl. Mtn. at 10.) As such, Plaintiff contends that Mexico "has an interest in regulating its legal [sic], having them paid if they earned it, and having them compensate their client if they did not." (Dkt. No. 51-1 at 14).

Defendant argues Plaintiff has failed to state a significant interest for Mexican law to govern and contends that California has fundamental interests in enforcing its bar of one-way fee shifting in contract litigation (Cal. Civil Code § 1717) and applying its statute of limitations to protect parties from defending stale claims. (Dkt. 52 at 13).

The Court finds that both California and Mexico have a significant interest in enforcement of their respective laws. The subject laws demonstrate fundamental differences in approach as to the amount of recovery that is available in a contract action. Ultimately, California and Mexico share a fundamental interest in defining the parameters of available recovery.

### c. The nature and strength of the interest of each jurisdiction

Under the third factor of the governmental interest analysis, the Court is required to compare the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the politic of the other state and then ultimately applies the "law of the state whose interest would be more impaired if its law were not applied." Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th at

16 **Civil Action No. 11-cv-2380-GPC-WMC**

107. Undergoing this analysis results in a determination that California's interest would be more impaired if its law were not applied as to the issues of the applicable statute of limitations and recoverable fees and costs.

The primary issue here is whether the statute of limitations will limit Plaintiff's recovery. Under California law, a two year statute of limitations applies and under Mexican law IBLC's claims dating back to 2004 are not time-barred. (Silva Decl. ¶¶ 34-36; Cal. Code. Civ. Pro. § 339.) Statutes of limitation are designed to protect the enacting state's residents and courts from the burdens associated with the prosecution of stale cases in which memories have faded and evidence has been lost. Ashland v. Provence, 129 Cal.App. 790, 794 (1982); Davies v. Kransa, 14 Cal. 3d 502, 512(1975). Here, Defendant, currently a resident of Nevada, is reported to have been a resident of California at the time that the legal services were provided. California has a public policy interest in seeing the Defendant has an opportunity to gather evidence while facts are still fresh. See Davies, 14 Cal. 3d at 512. Mexico would appear to side with a Plaintiff's right to recover the entirety of a contract obligation without regard to the staleness of the claim and the likely loss of evidence and testimony. Given the due process concerns that are implicated by a lengthy statute of limitations, the Court finds that California's interests would be more impaired if its' law were not applied.

In addition, California Code § 1717 has barred the one-way fee shifting in contract litigation that is otherwise available under Mexican law. Pursuant to Mexican civil procedure, IBLC could recover unpaid fees under the contract in addition to outside and internal attorney costs and fees incurred to bring the litigation. (Silva Decl. ¶¶ 26.iii-iv, 27; see also n. 3, "a lawyer [can be] compensated for fees and costs suffered during his own litigation collecting for his work.") California courts have found that §1717(a) barring one-way fee shifting

17                                          **Civil Action No. 11-cv-2380-GPC-WMC**

represents a strongly held public policy. "One-way sided attorney's fees clauses can [sic] be used as an instrument of oppression to force settlement of dubious or unmeritorious claims. Section 1717 was obviously designed to remedy this evil." Ribbens International, S.A. de C.V. v. Transp. International Pool, Inc., 47 F. Supp. 2d 1117, 1123 (C.D. Cal. 1999) (citing Coast Bank v. Holmes, 19 Cal.App.3d 581, 596–97 (1971)(citation omitted); Milman v. Shukhat, 22 Cal.App.4th 538, 543 (1994) ("Section 1717 was enacted in 1968. It is one of several similarly worded statutes which are recognized as being part of an overall legislative policy designed to enable consumers and others who may be in a disadvantageous bargaining position to protect their rights through the judicial process by permitting recovery of attorney's fees in the event they prevail.") (citations and quotations omitted)). Thus, California's strong interest in applying and enforcing Section 1717 also weighs in favor of applying California law to this matter.

Finally, California has an additional significant interest in this case that Mexico does not. The fact that the proceeding is taking place in California is important to the choice of law issue. California has an interest in applying its own law to this case. Rosenthal v. Fonda, 862 F.2d 1398, 1402 (9th Cir.1988) (citing Strassberg v. New Eng. Mut. Life Ins. Co., 575 F.2d at 1264). Plaintiff, as a firm of learned lawyers, had the choice of filing their action in a court in Mexico or in California. Plaintiff chose the California court understanding that that action would be taken into account in favor of applying California law.

For these reasons, the Court concludes that California has a greater interest in having its laws applied to the contract actions. Consequently, California law will be applied to the substantive and procedural issues related to the contract causes of action.

18 **Civil Action No. 11-cv-2380-GPC-WMC**

### B. Application of California Law to Plaintiff's Contract Claims

Having found California law applies to the instant action, the Court makes the following determination. Pursuant to Cal. Code. Civ. Pro. § 339, a two year statute of limitations applies to the oral contract between Plaintiff IBLC and Defendant Bracamonte. As Plaintiff IBLC filed this action on October 13, 2011, the operative date for two year statute of limitations is October 13, 2009. Based on the statute of limitations and the undisputed record, Plaintiff may seek recovery for the unpaid "regular" fees for the billing period beginning in September 2009. Regarding "deferred" fees, the Court shall leave the trier of fact to determine when the parties finalized the modified payment arrangement. The record indicates the temporary discount agreement was based on Mr. Andere's best recollection, and the arrangement changed various times over the course of the agreement. Given these uncertain facts, the Court finds there is a genuine issue for trial as to when the parties finalized the temporary discount arrangement.

## V. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant's motion for partial summary judgment and **DENIES** Plaintiff's motion for partial summary judgment. (Dkt. Nos. 41, 51.)

**IT IS SO ORDERED.**

DATED: July 23, 2013

_____
HONORABLE GONZALO P. CURIEL

19            **Civil Action No. 11-cv-2380-GPC-WMC**